FILED

2008 AUG 27 AM 8:04

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY_____ nc

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

October 2007 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 Plaintiff,<br><br>                 v.<br><br>JERRY FANYUAN LIN,<br>JASON I. MING WEI,<br>REN SUI,<br>   a.k.a. "Jeffrey,"<br>ERIK DAMIEN VICENTE,<br>JOSE G. GARIBAY,<br>   a.k.a. "Guero,"<br>SHANE KELTER,<br>ADRIAN GARCIA DE ALBA,<br>   a.k.a. "Pedro,"<br>JAGMOHAN S. DHILLON,<br>PARAMIJT SINGH,<br>   a.k.a "Pumma,"<br>WALTHER EDGARDO ORELLANA<br>AGUILAR,<br>   a.k.a. "Sharky,"<br>FAUSTO VILLA PEREZ,<br>MING CHIEN HSIEH,<br>   a.k.a. "Sonny,"<br>HONG YEE CHOW,<br>   a.k.a. "Annie,"<br>MARCO ANTONIO SILVA MOTA,<br>ALEXANDER CHIANG POU,<br>   a.k.a. "Alex," | SA CR 08-**SACR08-223**<br><br>I N D I C T M E N T<br><br>[21 U.S.C. § 846: Conspiracy<br>to Distribute and Possess with<br>Intent to Distribute; 21<br>U.S.C. § 841(a): Possession<br>with Intent to Distribute 3,4-<br>Methylenedioxymethamphetamine;<br>21 U.S.C. § 841(a): Possession<br>with Intent to Distribute<br>Methamphetamine; 21 U.S.C. §<br>841(a): Possession with Intent<br>to Distribute Cocaine; 18<br>U.S.C. § 1956(a)(3)(A):<br>Laundering of Monetary<br>Instruments] |



DOCKETED ON CM

AUG 28 2008

BY ___ 040

UNDER SEAL

NATHANAEL GARRARD LINEHAM,  )
     a.k.a. "Nat,"           )
MICHELLE ENCK,               )
                             )
          Defendants.        )
_____)

The Grand Jury charges:

COUNT ONE

[21 U.S.C. § 846]

I.   OBJECTS OF THE CONSPIRACY

     1.   Beginning on or about a date unknown to the Grand Jury,
but at least since April 2006, and continuing to on or about
August 27, 2008, in Orange, Los Angeles, Riverside, and San
Bernardino Counties, within the Central District of California,
and elsewhere, defendants JERRY FANYUAN LIN, JASON I. MING WEI,
REN SUI, also known as ("a.k.a.") "Jeffrey," ERIK DAMIEN VICENTE,
JOSE G. GARIBAY, a.k.a. "Guero," SHANE KELTER, ADRIAN GARCIA DE
ALBA, a.k.a "Pedro," JAGMOHAN S. DHILLON, PARAMIJT SINGH, a.k.a.
"Pumma," WALTHER EDGARDO ORELLANA AGUILAR, a.k.a. "Sharky,"
FAUSTO VILLA PEREZ, MING CHIEN HSIEH, a.k.a. "Sonny," HONG YEE
CHOW, a.k.a. "Annie," MARCO ANTONIO SILVA MOTA, ALEXANDER CHIANG
POU, a.k.a. "Alex," NATHANAEL GARRARD LINEHAM, a.k.a. "Nat,"
MICHELLE ENCK, and others known and unknown, aiding and abetting
each other, did conspire and agree with each other to knowingly
and intentionally distribute and possess with intent to
distribute a mixture or substance containing a detectable amount
of 3,4-methylenedioxymethamphetamine (also known as "MDMA"), a
schedule I controlled substance, more than 5 kilograms of a
mixture or substance containing a detectable amount of cocaine, a
Schedule II controlled substance, and more than 500 grams of a

mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, all in violation of Title 21, United States Code, Section 841(a)(1).

II. MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

2.    The objects of the conspiracy were to be accomplished in substance as follows:

a.    Defendant LIN would obtain MDMA and cocaine from defendant WEI.  Defendant LIN would use the proceeds from the sale of MDMA and cocaine to further his narcotics activities in the United States through the purchase and resale of methamphetamine and other controlled substances.

b.    Defendant WEI would oversee the importation of MDMA into the United States from Canada and would oversee the trafficking of kilogram quantities of cocaine to Canada from the United States.

c.    Defendant KELTER would direct defendant WEI's activities related to the trafficking of narcotics to or from Canada and the laundering of narcotics proceeds.

d.    Defendants HSIEH and CHOW would distribute, transport, and move narcotics in the United States at defendant LIN's direction.

e.    Defendants SUI and POU would purchase narcotics from defendant LIN to further distribute the narcotics in the United States.

f.    Defendant VICENTE would supply methamphetamine to defendant LIN in the United States.

///

3

g.    Defendants GARIBAY and MOTA would supply methamphetamine to defendant VICENTE in the United States.

h.    Defendant SINGH would assist in coordinating the distribution and transportation of narcotics, specifically cocaine, from the United States to Canada for defendant WEI and others.

i.    Defendants AGUILAR, DHILLON, and PEREZ would distribute, transport, and move narcotics, specifically cocaine, for defendant WEI and others.

j.    Defendant DE ALBA would supply narcotics to defendant WEI and others.

k.    Defendant LINEHAM would use his position with Data Locking, a.k.a. BeStealth, to market encrypted Blackberry electronic devices to narcotics traffickers in order to thwart law enforcement detection.

l.    Defendant LINEHAM would direct defendant ENCK and other individuals to distribute these encrypted devices on his behalf to narcotics traffickers, such as defendants WEI, AGUILAR, and DE ALBA, so that they could avoid law enforcement detection.

III. OVERT ACTS

3.    In furtherance of the conspiracy and to accomplish the objects of the conspiracy, on or about the following dates, defendants LIN, WEI, SUI, VICENTE, GARIBAY, KELTER, DE ALBA, DHILLON, SINGH, AGUILAR, PEREZ, HSIEH, CHOW, MOTA, POU, LINEHAM, ENCK, and others known and unknown, committed various overt acts within the Central District of California and elsewhere, including but not limited to, the following:

///

4

## A.    September 8, 2006 Distribution of 2,000 MDMA Tablets

4.    On or about September 6, 2006, a confidential source ("CS") had a recorded telephone call with defendant LIN to set up a meeting to discuss a narcotics transaction.

5.    On or about September 6, 2006, defendant LIN met with the CS.  Defendant LIN told the CS that he would supply approximately 2,000 MDMA pills to defendant SUI directly.  The CS told defendant LIN that defendant SUI would call defendant LIN on September 8, 2006 to arrange the deal.

6.    On or about September 8, 2006, defendant LIN had several recorded telephone conversations with the CS in which they discussed the sale of MDMA for later that day.

7.    On or about September 8, 2006, defendant SUI had several recorded telephone conversations with the CS regarding the sale of MDMA.

8.    On or about September 8, 2006, defendant LIN placed a telephone call to defendant WEI to discuss obtaining the MDMA.

9.    On or about September 8, 2006, defendant LIN went to defendant WEI's residence in downtown Los Angeles to pick up the MDMA.

10.    On or about September 8, 2006, defendant LIN met with defendant SUI and provided him with approximately 2,000 tablets of MDMA.

11.    On or about September 8, 2006, defendant SUI sold the approximately 2,000 MDMA tablets that he had obtained from defendant LIN to an undercover agent of the Federal Bureau of Investigation ("UC").

///

**B.   September 20, 2006 Distribution of 1,000 MDMA Tablets**

12.   On or about September 19, 2006, defendant LIN contacted the CS to inform the CS that defendant SUI had ordered 1,000 MDMA tablets from defendant LIN and that defendant LIN was going to arrange to deliver the 1,000 MDMA tablets to defendant SUI the next day.

13.   On or about September 20, 2006, defendant LIN provided defendant SUI with approximately 1,000 MDMA tablets.

14.   On or about September 20, 2006, defendant SUI sold the approximately 1,000 MDMA tablets that he had obtained from defendant LIN to the UC.

**C.   November 8, 2006 Distribution of Methamphetamine**

15.   On or about November 4, 2006, defendant LIN had a recorded telephone conversation with defendant SUI in which they discussed defendant LIN providing defendant SUI with a pound of "ice" (methamphetamine).

16.   From on or about November 4, 2006 to November 6, 2006, defendant LIN and defendant SUI had several recorded telephone calls regarding arranging the methamphetamine transaction for November 8, 2006.

17.   On or about November 7, 2006, defendant LIN had several recorded telephone conversations with defendant VICENTE regarding obtaining methamphetamine for two deals defendant LIN had scheduled for the week.

18.   On or about November 8, 2006, defendant LIN called defendant HSIEH and told defendant HSIEH that he needed to obtain the money owed to defendant LIN from the sale of other narcotics in order to purchase the methamphetamine to sell to defendant

6

SUI. Defendant LIN and defendant HSIEH also discussed the prices that defendant LIN was going to pay defendant VICENTE for the methamphetamine.

19. On or about November 8, 2006, defendant LIN and defendant SUI had several recorded telephone conversations in which they discussed the price and sale of one pound of methamphetamine for later that evening.

20. On or about November 8, 2006, defendant LIN and defendant HSIEH had several recorded telephone conversations regarding obtaining methamphetamine from defendant VICENTE. Defendant LIN agreed to pay defendant HSIEH $1,000 after the deal for defendant HSIEH's role in the transaction and defendant LIN also instructed defendant HSIEH to meet with defendant VICENTE to pay for the methamphetamine.

21. On or about November 8, 2006, defendant LIN had several recorded telephone conversations with defendant VICENTE in which they discussed defendant LIN obtaining methamphetamine from defendant VICENTE that night.

22. On or about November 8, 2006, defendant SUI met with the UC in defendant SUI's car at a gas station in Rowland Heights, California, and defendant SUI informed the UC that defendant SUI was still waiting for defendant LIN to obtain the one pound of methamphetamine.

23. On or about November 8, 2006, defendant LIN had a recorded telephone conversation with the UC, who was still with defendant SUI, in which defendant LIN stated that he would be able to provide the methamphetamine in about an hour.

///

24. On or about November 8, 2006, defendant SUI took $5,000 from the UC so that defendant LIN could obtain the pound of methamphetamine. Defendant SUI agreed that the UC would provide the remaining $7,000 once the UC received the pound of methamphetamine.

25. On or about November 8, 2006, defendant SUI gave the $5,000 to defendant LIN who was parked in another vehicle at the gas station.

26. On or about November 8, 2006, defendant LIN gave a half pound of methamphetamine to defendant SUI.

27. On or about November 8, 2006, defendant SUI gave the half pound of methamphetamine to the UC and informed the UC that defendant LIN had obtained only a half pound of "ice" (methamphetamine). The UC then provided defendant SUI with an additional $1,000.

D. November 10, 2006 Distribution of Methamphetamine

28. On or about November 9, 2006, defendant LIN and defendant SUI had several recorded telephone conversations in which they discussed how much methamphetamine defendant SUI needed to provide to his buyer, the UC. Defendant LIN agreed to provide a half pound of methamphetamine to defendant SUI so that he could complete the deal with the UC.

29. On or about November 9, 2006, defendant LIN had several recorded telephone calls with defendant VICENTE regarding defendant LIN obtaining a half pound of methamphetamine from defendant VICENTE.

30. On or about November 9, 2006, defendant LIN obtained a half pound of methamphetamine from defendant VICENTE.

8

31. On or about November 9, 2006, defendant LIN and defendant VICENTE had several recorded telephone conversations in which defendant LIN complained about the quality of the methamphetamine.

32. On or about November 10, 2006, defendant LIN provided defendant SUI with a half pound of methamphetamine.

33. On or about November 10, 2006, defendant SUI sold the UC a half pound of methamphetamine.

E. November 15, 2006 Distribution of Methamphetamine

34. On or about November 14, 2006, defendant LIN had several recorded telephone calls with defendant VICENTE regarding defendant LIN obtaining a distributable quantity of methamphetamine from defendant VICENTE.

35. On or about November 15, 2006, defendant LIN and defendant VICENTE met and defendant VICENTE provided defendant LIN with a distributable quantity of methamphetamine.

36. On or about November 15, 2006, defendant LIN and defendant VICENTE had several recorded telephone conversations in which defendant LIN complained about the quality of the methamphetamine and defendant VICENTE assured defendant LIN that the "new batch" would be of better quality.

F. November-December 2006 Agreement Regarding MDMA Distribution

37. On or about November 6, 2006, defendant LIN had a recorded telephone call with defendant POU in which defendant POU inquired as to whether defendant LIN had any MDMA to sell defendant POU.

38. On or about November 19, 2006, defendant LIN had a recorded telephone call with defendant POU in which defendant POU

9

agreed to buy approximately five (5) "boats" (5,000 tablets) of MDMA per week if defendant LIN lowered his sale price.

39. On or about December 5, 2006, defendant LIN had a recorded telephone call with defendant POU in which defendant POU explained to defendant LIN that he was willing to buy five (5) "boats" (5,000 tablets) of MDMA per week from defendant LIN if defendant LIN again lowered his sale price.

40. On or about December 6, 2006, defendant LIN had a recorded telephone call with defendant POU in which defendant LIN stated that he would lower his sale price per MDMA tablet if defendant POU agreed to purchase 10,000 tablets.

G. January 2007 Distribution of Methamphetamine

41. On or about January 7, 2007, defendant VICENTE and defendant GARIBAY had a recorded telephone conversation in which defendant VICENTE informed defendant GARIBAY that he needed to pick up a quarter pound of methamphetamine and that it needed to be of good quality because it was for defendant LIN. Defendant GARIBAY informed defendant VICENTE that there was not any good quality methamphetamine at this time.

42. On or about January 7, 2007, defendant VICENTE and defendant GARIBAY had a recorded telephone conversation in which defendant GARIBAY asked defendant VICENTE if he had gotten any methamphetamine. Defendant VICENTE confirmed that he was picking some up that night.

43. On or about January 8, 2007, defendant VICENTE gave defendant LIN a quarter pound of methamphetamine.

44. On or about January 8, 2007, defendant VICENTE and defendant LIN had a recorded telephone conversation in which

defendant LIN complained about defendant VICENTE providing bad quality methamphetamine. Defendant VICENTE and defendant LIN agreed that defendant VICENTE would get better quality methamphetamine and exchange it for the quarter pound of methamphetamine that defendant LIN was already given.

45. On or about January 8, 2007, defendant VICENTE and defendant GARIBAY had a recorded telephone conversation in which defendant GARIBAY informed defendant VICENTE that he had good quality methamphetamine that would be ready for defendant VICENTE to pick up the next day.

46. On or about January 9, 2007, defendant VICENTE and defendant GARIBAY had several recorded telephone conversations coordinating the pick up and delivery of the higher quality methamphetamine.

H. January 10, 2007 Transfer of Drug Proceeds

47. On or about January 10, 2007, defendant WEI met with defendant DE ALBA and gave defendant DE ALBA a suitcase containing approximately $179,860 in U.S. currency as payment for narcotics previously supplied to defendant WEI.

48. On or about January 10, 2007, defendant DE ALBA possessed approximately $179,860 in U.S. currency representing narcotics proceeds.

I. January 16, 2007 Transfer of Drug Proceeds

49. On or about January 16, 2007, a courier delivered approximately $200,000 in U.S. currency representing narcotics proceeds to defendant WEI.

50. On or about January 16, 2007, defendant WEI possessed approximately $600,000 in U.S. currency representing narcotics

11

proceeds.

J.   February 8, 2007 Distribution of Methamphetamine

51.   On or about February 8, 2007, defendant CHOW and defendant VICENTE had several recorded telephone conversations regarding defendant CHOW obtaining a half pound of methamphetamine from defendant VICENTE.

52.   On or about February 8, 2007, defendant VICENTE and defendant GARIBAY had several recorded telephone conversations regarding defendant GARIBAY supplying defendant VICENTE with a half pound of methamphetamine.

53.   On or about February 8, 2007, defendant LIN met with the UC in Orange County, California in order for defendant LIN to provide the UC with a half pound of methamphetamine.  Defendant LIN informed the UC that they would have to travel to Los Angeles County to meet with the supplier of the methamphetamine.

54.   On or about February 8, 2007, defendant LIN met with the UC in San Gabriel, California and the UC provided LIN with $4,200 in cash to purchase the methamphetamine.  Defendant LIN in turn provided the cash to defendant CHOW who took the money to obtain the methamphetamine.

55.   On or about February 8, 2007, defendant CHOW met with defendant VICENTE and obtained a half pound of methamphetamine.

56.   On or about February 8, 2007, defendant CHOW returned to the location where defendant LIN and the UC were waiting and provided defendant LIN with the methamphetamine.

57.   On or about February 8, 2007, defendant LIN provided the UC with a half pound of methamphetamine and the UC gave defendant LIN an additional $3,000 to pay for it.

K.   March 2007 Negotiations Regarding MDMA and Cocaine

58.   On or about March 14, 2007, defendant LIN met with the UC in Arcadia, California and provided the UC with two MDMA tablets as samples.  Defendant LIN and the UC then negotiated the price at which defendant LIN would sell the MDMA to the UC.

59.   On or about March 14, 2007, defendant LIN, during the meeting with the UC in Arcadia, California, also provided the UC with a sample of cocaine.  Defendant LIN told the UC that his supplier for the cocaine was defendant WEI.

L.   April 5, 2007 Methamphetamine Distribution

60.   On or about April 4, 2007, defendant VICENTE had several recorded telephone conversations with defendant MOTA regarding defendant VICENTE obtaining approximately a half pound of methamphetamine from defendant MOTA.

61.   On or about April 5, 2007, defendant VICENTE had several recorded telephone conversations with defendant MOTA regarding defendant VICENTE picking up approximately a half pound of methamphetamine from defendant MOTA.

62.   On or about April 5, 2007, defendant VICENTE met with defendant MOTA and defendant VICENTE obtained a half pound of methamphetamine from defendant MOTA.

M.   April and May 2007 Negotiations Regarding Cocaine

63.   On or about April 20, 2007, defendant WEI met with the CS and informed the CS that he was a cocaine and MDMA distributor and that he supplied defendant LIN with cocaine and MDMA.

64.   On or about April 20, 2007, defendant WEI informed the CS that he could provide cocaine to the CS if they were to do

13

business together, but that the CS would need to order at least five (5) kilograms of cocaine at a time.

65.  On or about May 17, 2007, defendant WEI told the CS that he used to pay $10,000 per kilogram of cocaine wholesale, but that his price has been raised to $16,500 per kilogram of cocaine wholesale.  Defendant WEI admitted that he got a better price because he orders 50 to 100 kilograms of cocaine at a time.

N.  May 2007 Methamphetamine Distribution

66.  On or about May 21, 2007, defendant VICENTE and defendant MOTA had a recorded telephone conversation in which defendant VICENTE discussed obtaining methamphetamine from another source, but informed defendant MOTA that he would call defendant MOTA if his other source could not come through.

67.  On or about May 21, 2007, defendant VICENTE had a recorded telephone conversation with defendant MOTA in which defendant MOTA informed defendant VICENTE that he could obtain high quality methamphetamine if defendant VICENTE was interested. Defendant VICENTE informed defendant MOTA that he would call later.

68.  On or about May 22, 2007, defendant VICENTE had a recorded telephone conversation with defendant MOTA in which defendant VICENTE informed defendant MOTA that he had to check with "the Chinese people" to see if they wanted the high quality methamphetamine that defendant MOTA had obtained.

O.  June 19, 2007 Transportation of Cocaine to Canada

69.  From on or about June 15, 2007, to on or about June 18, 2007, defendant WEI had several recorded telephone conversations with defendant SINGH regarding defendant SINGH

14

sending defendant DHILLON to pick up cocaine from defendant WEI in Los Angeles County to transport to Canada.

70. On or about June 19, 2007, defendant WEI had a recorded telephone conversation with defendant SINGH in which defendant SINGH informed defendant WEI that he would have defendant DHILLON contact defendant WEI regarding the pick up of cocaine.

71. On or about June 19, 2007, defendant WEI had several recorded telephone conversations with defendant DHILLON regarding the pick up of cocaine. Defendant DHILLON explained to defendant WEI that he was driving a tractor-trailer so that defendant WEI could load the cocaine. Defendant WEI told defendant DHILLON that he had 33 kilograms of cocaine, but that he needed to push back the pick up time because defendant WEI had to pick up a few more kilograms to total 45 kilograms.

72. On or about June 19, 2007, defendant WEI met with defendant DHILLON at a warehouse in Carson, California to load the approximately 45 kilograms of cocaine into the tractor-trailer.

73. On or about June 19, 2007, defendant WEI had a recorded telephone conversation with defendant SINGH in which defendant WEI confirmed that he gave defendant DHILLON 45 kilograms of cocaine.

P.  June-July Transportation of 35 Kilograms of Cocaine to Canada

74. On or about June 26, 2007, defendant SINGH had a recorded telephone conversation with a confidential source ("CS2") regarding defendant SINGH hiring CS2 to drive a tractor-trailer loaded with cocaine from Los Angeles County to Canada.

15

75. From on or about June 28, 2007, to on or about July 1, 2007, defendant SINGH had several recorded telephone conversations with CS2 regarding the logistics of CS2 picking up the cocaine in Los Angeles County.

76. On or about July 1, 2007, defendant SINGH had a recorded telephone conversation with CS2 in which defendant SINGH gave CS2 the telephone number of the person to get in contact with to pick up the cocaine and defendant SINGH provided CS2 with a code to tell the contact person in order to be able to obtain the cocaine.

77. On or about July 1, 2007, defendant PEREZ loaded approximately 35 kilograms of cocaine into a vehicle driven by CS2.

Q. Use of Encrypted Blackberries to Thwart Law Enforcement Detection

78. On or about June 28, 2007, defendant WEI had several recorded telephone conversations with defendant ENCK regarding defendant WEI obtaining an encrypted Blackberry device provided by defendant LINEHAM.

79. On or about June 28, 2007, defendant WEI met with defendant ENCK who provided defendant WEI, at the direction of defendant LINEHAM, with an encrypted Blackberry device.

R. August 2007 Attempted Distribution of 80 Kilograms of Cocaine

80. On or about August 18, 2007, defendant WEI had several recorded telephone conversations with defendant AGUILAR regarding meeting that day in order for defendant WEI to provide defendant AGUILAR with approximately ten kilograms of cocaine.

16

81. On or about August 18, 2007, defendant WEI provided approximately ten kilograms of cocaine to defendant AGUILAR.

82. On or about August 20, 2007, defendant WEI obtained approximately $200,000 in U.S. currency from an undercover agent ("UC2") that represented the proceeds from the sale of narcotics.

83. On or about August 20, 2007, shortly after defendant WEI obtained the $200,000, defendant WEI had a recorded telephone call with defendant KELTER in which defendant WEI expressed concern that he was being followed by law enforcement so he abandoned his vehicle with the money in it. Defendant KELTER attempted to reassure defendant WEI that the individuals who provided the money to defendant WEI were not law enforcement and that defendant WEI needed to go back and get the money.

84. From on or about August 20, 2007, to on or about August 21, 2007, defendant WEI had several recorded telephone conversations with defendant KELTER in which defendant WEI continued to express concern that law enforcement had detected him. Defendant KELTER and defendant WEI discussed the need to clean out the stash pad and defendant KELTER told defendant WEI that he would contact defendant AGUILAR to take care of it.

85. On or about August 21, 2007, defendant WEI had a recorded telephone conversation with defendant AGUILAR in which defendant WEI sent defendant AGUILAR to his stash pad to ensure that the 80 kilograms of cocaine that was contained in his stash pad were removed to avoid law enforcement detection.

86. On or about August 21, 2007, defendant AGUILAR went to the stash pad to ensure that there was no cocaine located there.

///

17

S.   Distribution of Encrypted Blackberry Devices to Thwart Law
     Enforcement Detection

87.   On or about December 14, 2007, defendant LINEHAM had a recorded telephone conversation with defendant ENCK in which defendant LINEHAM checked on the status of the Blackberry orders to narcotic traffickers that defendant ENCK was handling on his behalf.

88.   On or about January 6, 2008, defendant WEI had a recorded telephone conversation with defendant ENCK in which defendant WEI inquired as to how to "kill" his encrypted Blackberry device in order to avoid law enforcement detection.

89.   On or about January 8, 2008, defendant LINEHAM had a recorded telephone conversation with defendant ENCK in which they discussed the distribution of Blackberries to narcotic traffickers.

90.   On or about January 22, 2008, defendant LINEHAM had a recorded telephone conversation with defendant ENCK in which they discussed the distribution of Blackberries to narcotic traffickers.

COUNT TWO

[21 U.S.C. § 841(a)(1); 18 U.S.C. § 2]

On or about September 8, 2006, in Los Angeles County, within the Central District of California, defendants JERRY FANYUAN LIN, JASON I. MING WEI, and REN SUI, a.k.a. "Jeffrey," aiding and abetting each other, did knowingly and intentionally possess with intent to distribute approximately 564.7 grams of a mixture or substance containing a detectable amount of 3,4-methylenedioxymethamphetamine (also known as "MDMA"), a schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

## COUNT THREE

[21 U.S.C. § 841(a)(1); 18 U.S.C. § 2]

On or about September 20, 2006, in Los Angeles County, within the Central District of California, defendants JERRY FANYUAN LIN and REN SUI, a.k.a. "Jeffrey," aiding and abetting each other, did knowingly and intentionally possess with intent to distribute approximately 274.2 grams of a mixture or substance containing a detectable amount of 3,4-methylenedioxymethamphetamine (also known as "MDMA"), a schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT FOUR

[21 U.S.C. § 841(a)(1); 18 U.S.C. § 2]

On or about November 8, 2006, in Los Angeles County, within the Central District of California, defendants JERRY FANYUAN LIN, REN SUI, a.k.a. "Jeffrey," ERIK DAMIEN VICENTE, and MING CHIEN HSIEH, a.k.a. "Sonny," aiding and abetting each other, did knowingly and intentionally possess with intent to distribute more than 50 grams of methamphetamine, approximately 98.8 grams, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT FIVE

[21 U.S.C. § 841(a)(1); 18 U.S.C. § 2]

On or about November 10, 2006, in Los Angeles County, within the Central District of California, defendants JERRY FANYUAN LIN, REN SUI, a.k.a. "Jeffrey," and ERIK DAMIEN VICENTE, aiding and abetting each other, did knowingly and intentionally possess with intent to distribute more than 50 grams of methamphetamine, approximately 93.6 grams, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT SIX

[21 U.S.C. § 841(a)(1); 18 U.S.C. § 2]

On or about February 8, 2007, in Orange and Los Angeles Counties, within the Central District of California, defendants JERRY FANYUAN LIN, ERIK DAMIEN VICENTE, JOSE G. GARIBAY, and HONG YEE CHOW, a.k.a. "Annie," aiding and abetting each other, did knowingly and intentionally possess with intent to distribute more than 50 grams of methamphetamine, approximately 145.7 grams, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT SEVEN

[21 U.S.C. § 841(a)(1); 18 U.S.C. § 2]

On or about July 1, 2007, in Los Angeles and Riverside Counties, within the Central District of California, defendants FAUSTO VILLA PEREZ and PARAMIJT SINGH, aiding and abetting each other, did knowingly and intentionally possess with intent to distribute more than 5 kilograms, approximately 35 kilograms, of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

## COUNT EIGHT

### [18 U.S.C. § 1956(a)(3)(A)]

On or about February 8, 2007, in Orange and Los Angeles Counties, within the Central District of California, defendant JERRY FANYUAN LIN intending to promote the carrying on of specified unlawful activity, that is, felonious narcotics trafficking, knowingly and willfully conducted a financial transaction affecting interstate or foreign commerce involving property represented by a law enforcement officer to be (a) the proceeds of felonious narcotics trafficking and (b) property used to conduct or facilitate felonious narcotics trafficking, in that defendant LIN sold to an undercover law enforcement officer for $7,200.00 cash approximately 145.7 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

A TRUE BILL

/s/

Foreperson

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

DOUGLAS F. McCORMICK
Assistant United States Attorney
Acting Chief, Santa Ana Branch Office

TERRI K. FLYNN
Assistant United States Attorney

25